**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. 1:10-cv-01564-TWP-DML |
| ) | |
| BEATRIZ E. MCCAUSLAND, ) | |
| LA RAZA, LLC, ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON DAMAGES

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed this action alleging that Defendants Beatrize E. McCausland and La Raza, LLC (collectively, "Defendants") knowingly and willfully violated certain provisions of the Communications Act of 1934 (namely, 47 U.S.C. §§ 553 and 605) by unlawfully intercepting and showing a boxing match between Oscar De La Hoya and Manny Pacquiao. Specifically, on December 6, 2008, De La Hoya and Pacquiao squared off in a blockbuster fight billed as the "The Dream Match." Ultimately, Pacquiao won in a lopsided fashion, emerging victorious via technical knockout after De La Hoya declined to come out of his corner after the eighth round. The Associated Press, *Smaller Pacquiao Topples De La Hoya*, December 7, 2008, N.Y. TIMES, http://www.nytimes.com/2008/12/07/sports/ othersports/ 07boxing.html?ref=oscardelahoya (last visited, January 11, 2012). Given the top-echelon fighters and the prodigious pre-fight fanfare, it was not surprising that the fight proved to be wildly successful from a commercial standpoint. In fact, it was one of the highest grossing pay-per-view events of 2008, generating 1.25 million pay-per-view buys and totaling $70 million in pay-per-view revenue. Richard Sandomir, *In Boxing, Pay-Per-View and a Fistful of Dollars*, December 11, 2008, N.Y. TIMES, http://www.nytimes.com/2008/12/12/ sports /othersports/12sandomir.html?ref =scardelahoya (last visited, January 11, 2012). And, notably,

1

this considerable sum does not account for the all too common practice of pay-per-view piracy, a practice that allows free-riders to drive up costs for paying customers. Indeed, as evidenced by this lawsuit, not all broadcasters paid their fair share to show the De La Hoya/Pacquiao fight.

**A. Factual Background**

Plaintiff purchased and retained nationwide commercial distribution rights to the De La Hoya/Pacquiao welterweight bout. Accordingly, Plaintiff entered into sub-licensing agreements with various commercial establishments (e.g. casinos, racetracks, bars) to permit the public exhibition of the fight. To guard against piracy, the transmission of the fight was encrypted and made available only to those commercial locations that paid Plaintiff the requisite license fees to show the fight. Defendant McCausland is the owner of La Raza, a bar/restaurant with an occupancy of roughly 50 people in the town of Clarksville, Indiana, a town of approximately 22,000. The evidence submitted to the Court indicates that Defendants knowingly and willfully intercepted the fight and showed it through illegal means in violation of federal law. *See* 47 U.S.C. §§ 553 and 605. Notably, for an establishment the size of La Raza, the fight would've cost $2,200.00 to broadcast legally.

Quite understandably, Plaintiff wishes to enforce its distribution rights to ensure that only paying customers gain access to the program. To enforce its rights, Plaintiff deploys investigators to travel to different commercial establishments to determine whether the program is being shown without proper authorization. (How those investigators know a fight is showing in a given establishment in the first place remains unclear.) Here, through an affidavit submitted to the Court, an investigator testified that he entered La Raza (he calls it La Herradura, but they are one and the same) on the night of the fight at roughly 9:11 p.m., and the fight was showing on a single 60" projection television. The investigator stayed at La Raza for just over 15 minutes.

While there, he completed three separate headcounts, observing 12, 14, and 17 patrons at three separate times. Additionally, the investigator noted that La Raza did not require the patrons to pay a cover charge to gain entry.

As a result of the alleged piracy, Plaintiff filed a complaint alleging violations of § 553, § 605, and a state law claim for conversion. Plaintiff then served Defendants with a summons on May 27, 2011. Defendants never responded. On July 20, 2011, the clerk issued an entry of default. Plaintiff now asks the Court to enter a default judgment under Fed. R. Civ. P. 55, along with damages. Naturally, Plaintiff seeks the maximum damages award potentially available under the law, $112,200.00, plus attorney's fees and costs. Viewing this request by its component parts, Plaintiff seeks $10,000.00 in statutory damages under § 605; $100,000.00 in enhanced damages under § 605; $2,200.00 for its state law conversion claim; and attorney's fees and costs.

On January 4, 2012, the Court held a damages hearing, which Defendants did not attend. At the hearing, the Court, through an oral order, entered a default judgment against Defendants. As a result of Defendants' default, they are deemed to have unlawfully intercepted the fight in order to show it to their patrons, and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Also, at the hearing, Plaintiff made a belated request for attorney's fees and costs under § 605(e)(3)(B)(iii). After reviewing Plaintiff's briefing and listening to his argument, the Court orally awarded damages to Plaintiff in the amount of $42,200.00, plus attorney's fees and costs. Specifically, the Court awarded $10,000.00 in statutory damages under § 605; $30,000.00

in enhanced damages under § 605; $2,200.00 for conversion under Indiana state law; and attorney's fees and costs. This entry explains the Court's rationale behind this damages award and, where necessary, modifies that award.

### A. Relevant Law

Plaintiff alleges violations of 47 U.S.C. §§ 553 and 605. Plaintiff is not allowed to simultaneously pursue relief under both statutes because they target two distinct types of piracy. *See J & J Sports Productions, Inc. v. Aguilera*, 2010 WL 2362189, *2 (N.D. Ill. June 11, 2010). Specifically, § 553 applies to the "unauthorized reception of cable services," while § 605 applies to "unauthorized publication or use of communication." Obviously, given Defendants' failure to respond to the complaint, Plaintiff is not in a position to conduct discovery to ascertain how Defendants stole the broadcast. Therefore, neither the Court nor Plaintiff can pinpoint which statute should be applied. Where, as here, Plaintiff cannot isolate the precise means of piracy employed by Defendants, the Court will accept Plaintiff's request to proceed under § 605, which allows for a greater recovery. *See id.* at *2 ("The Court concludes that although the precise means of transmission has not been determined, under the circumstances of this case, where Plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of Defendants' failure to appear or defend in this action, Plaintiff should not suffer the resulting prejudice."). A contrary ruling would risk prejudicing Plaintiff for circumstances that are outside of its control.

Under § 605(a), a claimant may elect actual damages or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Here, Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the Court. *Id.* Plaintiff also

4

seeks enhanced damages for willful violations under Section 605(e)(3)(C)(ii). That section permits enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. Finally, costs and reasonable attorney's fees are available under § 605(e)(3)(B)(iii).

The Court turns first to Plaintiff's request for statutory damages. As an initial matter, courts need not abide by a rigid formula when setting statutory damages. Some courts use a formula based on the number of patrons present; others award a flat sum per violation. *Compare Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding $50 per patron for an award of $3,750 in statutory damages) *with Kingvision Pay-Per-View Ltd. v. Gadson*, 2007 WL 2746780, *2-3 (M.D.N.C. Sept. 18, 2007) (awarding $10,000 in statutory damages – in addition to $10,000 in enhanced damages – against a commercial establishment with a seating capacity of 40, 27 patrons viewing the event on 1 large screen television, and a five dollar cover charge to enter the establishment). Given that relatively few patrons (12-17) watched the fight, Plaintiff urges the Court to adopt the "flat-sum" approach. The Court will heed this request, as a damages award based on few patrons sends a comparatively weak deterrent signal. Moreover, because sub-licensing fees are typically based on the *occupancy* of the establishment, calculating statutory damages using the number of patrons may not fully represent the harm done to Plaintiff. In its discretion, the Court has resolved to impose a statutory damages award at the maximum, $10,000.00. Three considerations buttress the Court's ruling: (1) the apparent need to send a strong deterrent signal, given the pervasiveness of piracy; (2) the Court is merely accepting Plaintiff's request for $10,000.00 in statutory damages; and (3) perhaps most importantly, by failing to respond, Defendants have failed to aid the Court in arriving at an appropriate figure.

With respect to enhanced damages, the evidence submitted to the Court (not to mention the telling fact that Defendants failed to respond), indicates knowing and willful behavior. Although they did not charge a cover or advertise the event, Defendants illegally showed the fight; in doing so, they presumably reaped a windfall (albeit a meager one, given the sparse turnout for the fight) and they also bolstered their reputation as a place to watch highly-anticipated boxing matches for free. As one district court noted, an additional award for willfulness will put violators "on notice that it costs less to obey the . . . laws than to violate them." *Rodgers v. Eighty Four Lumber Co.,* 623 F. Supp. 889, 892 (W.D.Pa.1985) (citation and internal quotations omitted).

In considering how much to award in enhanced damages, courts look to a range of factors, including: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Kingvision Pay-Per-View, Ltd. v. Rodriguez*, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003). In connection with those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business. *See, e.g., Garden City Boxing Club, Inc. v. Polanco,* 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006) (awarding total damages of $12,000).

Predictably, courts have imposed a wide range of enhanced damages. *Compare Rodriguez*, 2003 WL 548891, at *2 (assessing an enhancement of $1,000 for each act of piracy) *with Joe Hand Promotions, Inc. v. Carranza*, 2009 WL 4254460, *3 (E.D. Cal. Nov. 24, 2009) (awarding $10,000 in statutory damages and $90,000 in enhanced damages, considering that the establishment had an occupancy of 250, was in close proximity to an urban city, had nine

6

television screens, and charged $10 cover). Here, the application of the factors cuts in favor of a relatively modest enhanced damages award. Defendants' actions, although willful, had a relatively small impact: they occurred in a small geographic location; they occurred in a small establishment; there is no evidence that Defendant is a repeat offender; and there is no evidence that Defendants advertised or charged cover. That said, the Court also believes that the need to send a deterrent signal to Defendants and other would-be offenders is paramount. Moreover, the Court accords weight to the fact that Defendants have opted not to respond to Plaintiff's allegations in any fashion whatsoever. Not only does this failure to respond evince willfulness, it also precludes the Court from analyzing how a given damages award might impair the commercial viability of Defendants' business.[1] With these considerations in mind, the Court imposes an enhanced statutory damages award of $30,000.00.

Next, Plaintiff seeks $2,200.00 for the tort of conversion. As mentioned above, this would have been the cost for an establishment the size of La Raza to show the fight legally. Although the Court orally granted Plaintiff's request for conversion, it did so under the mistaken assumption that conversion damages were separate and independent of § 605 damages. The Court's own research has debunked this assumption. *See Joe Hand Promotions, Inc. v. Hurley*, 2011 WL 6727989, at *2 (S.D. Ill. Dec. 21, 2011) (plaintiff cannot assert a state law claim for conversion *in addition to* stating claims under § 553 and § 605 damages) (citing *Joe Hand Promotions, Inc. v. Lynch*, 2011 WL 5386358, at *3-5 (N.D. Ill. Nov. 7, 2011)); *see also Googies Luncheonette*, 77 F. Supp. 2d at 491 (denying plaintiff relief for claims under New York law, as granting separate relief under these laws would "violate the general principle that

---

[1] By way of example, if Defendants were able to furnish the Court with figures showing that they are open 360 days a year, serve an average of 75 customers per day, and make an average profit margin of $1.50 per customer, for a grand total of $40,500 in annual profits (360 x 75 x 1.5) (which is less than the total damages award here), the Court would have been able to take this figure into consideration when making its damages calculation.

7

precludes double recovery"). Although these cases apply Illinois and New York law, the Court finds their reasoning sound. Moreover, the scant Indiana authority found by the Court also calls into doubt the viability of Plaintiff's conversion claim. *See DirecTV, Inc. v. Beecher*, 296 F. Supp. 2d 937, 944 (S.D. Ind. 2003) ("DirecTV's claims for theft and conversion of satellite broadcasts are preempted."). Accordingly, after reconsidering its previous oral decision, the Court declines to award Plaintiff damages for conversion.

Finally, under 47 U.S.C. § 605(e)(3)(B)(iii), Plaintiff, as a prevailing party, "shall" recover "full costs, including . . . reasonable attorneys' fees." Plaintiff has submitted a fee request of $1,438.73 and a request for costs of $1,345.00, for a total of $2,783.73. The Court finds that amount to be reasonable; therefore, under the statute, that amount will be awarded.

## B. Conclusion

For the reasons set forth below, the Court enters a default judgment for Plaintiff and against Defendants in the amount of $42,783.73. A separate default judgment will accompany this entry.

SO ORDERED.

Date: 01/13/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Thomas P. Riley
LAW OFFICES OF THOMAS P. RILEY
tprlaw@att.net

Stephen W. Voelker
VOELKER LAW OFFICE
klvswv@aol.com